475 So.2d 204 (1985)
Harry Dean HUDDLESTON, Appellant,
v.
STATE of Florida, Appellee.
No. 64307.
Supreme Court of Florida.
August 29, 1985.
*205 Lawrence Besser, Sp. Asst. Public Defender of Samek & Besser, Miami, for appellant.
Jim Smith, Atty. Gen., and G. Bart Billbrough, Asst. Atty. Gen., Miami, for appellee.
ADKINS, Justice.
This is an appeal from a conviction of first-degree murder and a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Huddleston confessed to the murder of Dawn Perkins, a cashier at the Homestead Air Force Base Non-Commissioned Officers Club. Huddleston had also been an employee of the club until a few days before the murder when he was fired. The testimony showed that Huddleston went to the club on the day of the murder in the very early morning hour in order to pick up his last pay check. A few hours later, around 4:00 a.m., a security policeman at the Homestead Air Force Base testified that he found Huddleston sleeping in the corner of an unfinished building next to the club. When he awoke Huddleston, Huddleston told him he had no other place to go. After taking him to the patrol office, the officer escorted Huddleston off the base.
The body of the victim was discovered by the club manager later that morning when he arrived for work. In Huddleston's confession to the detective he stated that after he was escorted off the base, he rode his bicycle around for a while, parked it, and jumped a fence and headed back to the club. He knocked on the door of the club and the victim let him in. He stated that he then pretended to be doing his job for a few minutes, and then entered the ladies' bathroom. He then called for the victim, pretending that the bathroom was flooding. When the victim entered the bathroom he immediately attacked her. He stated that he struck the victim four or five times with his elbows, knocking her to the floor. The victim began screaming and struggling. She stated that she knew what Huddleston wanted, referring to the money. While the victim was on the floor, Huddleston picked up a chair and struck the victim on the head. Huddleston then began to strangle the victim.
When Huddleston noticed the victim was still moving and conscious, he left the bathroom, went across the hall to the bar, and brought back a six-inch, serrated-edged steak knife. Huddleston stabbed the victim repeatedly in the chest, neck, and back. During this stabbing, the victim asked, "Why are you stabbing me? I'm already dead." Huddleston only stopped when the blade of the knife bent.
When Huddleston observed some movement left in the victim's body, he again left the bathroom and obtained a sixteen-inch-long butcher knife from the kitchen. After returning to the bathroom, Huddleston began stabbing the victim again.
After the victim died, Huddleston stole approximately $13,000 from the cashier's cage and then left the club.
Huddleston was convicted of first-degree murder and armed robbery with a deadly weapon. The jury recommended a sentence of life imprisonment with no possibility of parole for at least twenty-five years for the murder conviction. However, the trial judge rejected the jury's advisory sentence and imposed a sentence of death.
Huddleston initially requests this Court to overturn his conviction and grant him a new trial because the petit jury selection procedure in his case did not comport with *206 the due process and equal protection clauses of the United States Constitution. This is so, he argues, because there was a substantial underrepresentation of Latins on the jury venire. We recently rejected this same argument in Valle v. State, 474 So.2d 796 (Fla. 1985). Huddleston has presented the same evidence as Valle; therefore, we also reject his claim.
Regarding his sentence, Huddleston argues that the proper standard was not met for overriding the jury's recommendation of life imprisonment. We agree. In Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), this Court held that:
In order to sustain a sentence of death following a jury recommendation of life the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
From this record we cannot say that the jury was unreasonable in recommending life imprisonment. The trial judge specifically found one statutory mitigating factor to be present, i.e., that Huddleston had no significant history of prior criminal activity. § 921.141(6)(a), Fla. Stat. (1983). In addition there was evidence presented that Huddleston had a history of drug abuse and that at the time of the homicide he had a very troubled personal life because he had just lost his job, his girlfriend was pregnant and wished to put the baby up for adoption contrary to his wishes, and his parents were on the verge of getting a divorce. Huddleston's age at the time of the commission of the crime, twenty-three, was also presented as a mitigating factor. While there is no per se rule which pinpoints age as an automatic mitigating or aggravating factor, Peek v. State, 395 So.2d 492 (Fla.), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981), we have held that the age of the defendant, twenty-one, could be considered by the jury as a mitigating factor. Cannady v. State, 427 So.2d 723 (Fla. 1983). Considering these factors we cannot say that the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ.
In conclusion, we affirm the conviction of first-degree murder. The sentence of death is vacated and the cause is remanded to the trial court for imposition of a sentence of life imprisonment without eligibility of parole for twenty-five years.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ALDERMAN, J., concurs in the conviction, but concurs in result only as to the sentence.