512 So.2d 176 (1987)
J.C. FEAD, Sr., Appellant,
v.
STATE of Florida, Appellee.
No. 68341.
Supreme Court of Florida.
September 3, 1987.
*177 Michael E. Allen, Public Defender, and P. Douglas Brinkmeyer and Pamela D. Presnell, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and John M. Koenig, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
BARKETT, Justice.
Appellant J.C. Fead, Sr., appeals his sentence of death pursuant to a conviction of first-degree murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We vacate the sentence of death imposed by the trial judge and remand for imposition of a life sentence.
Appellant was tried on charges of first-degree murder. The testimony at trial reflected that appellant and the victim, who was his girl friend, were engaged in a violent argument in front of the victim's sister and brother-in-law when appellant pulled a pistol out of his boot and shot the victim. Witnesses testified that appellant was very jealous of his girl friend, felt that she was leaving him, and had become angered when she danced with other men at a bar earlier in the evening.
Several witnesses testified that appellant had been drinking the entire day of the murder. The exact amount he drank was unclear, but unquestionably was substantial. Joe Peavy, sheriff of Madison County, testified that Fead "had been drinking heavily... [but] was not intoxicated, to where he didn't know what he was doing." At trial, a pathologist established that the victim's blood alcohol level at the time of her death was .27 and that a level of .10 is sufficient to place a person under the influence of alcohol. Based on this evidence, Fead sought to convince the jury that his blood alcohol level was about as high as the victim's. He thus defended against the charges by arguing that there was no specific intent to commit first-degree murder due to voluntary intoxication.
During the sentencing phase, appellant presented the testimony of Dr. Umesh Mahtre, a psychiatrist who concluded that appellant would have had a blood alcohol content of approximately .25 at the time of the shooting, and that this intoxication would have severely affected his ability to think and function. He also testified that appellant's actions were a result of jealousy, anger, and impulse; that any preexisting feelings of anger and jealousy would be magnified by the alcohol; that appellant had a greatly diminished capacity to appreciate his acts and control his impulses; and that appellant would have been under extreme mental duress and emotional disturbance due to his heavy intoxication. Dr. Mahtre further testified that appellant expressed remorse over his girl friend's death *178 and that jealousy had caused him to misconstrue the fact that she had danced with other men.
Appellant's sister testified that Fead was one of thirteen children. Their parents were sharecroppers. She testified that Fead was a hard worker all his life, had left grade school to go to work and support his family, helped supervise his younger brothers and sisters, and supported his children. She further testified that Fead and the victim had lived with her, that they always had gotten along well, and apparently loved each other.
Fead called a number of witnesses who testified that he was a quiet, easy-going, hard-working man who was a faithful employee, was highly trusted and rarely missed work. He also had his parole supervisor testify that he had been a model prisoner and model parolee prior to this murder. Moreover, his parole supervisor testified that if Fead were given a life sentence, he could work in farming within the prison system.
The state's only witness during the penalty phase was Cora Howard, the mother of Fead's eight children. She testified that she saw Fead shoot and kill another woman in 1973. The prior judgment and sentence for this second-degree murder was stipulated into evidence.
The jury found Fead guilty as charged but recommended a life sentence. The trial court, finding two aggravating circumstances (under sentence of imprisonment by being on parole, and prior violent felony conviction for second-degree murder), found no statutory mitigating circumstances and one nonstatutory mitigating circumstance (that he was a hard worker and good employee), and determined that the sole nonstatutory mitigating circumstance had "almost no weight in relationship to the two aggravating circumstances."
On appeal, appellant does not challenge his conviction but argues that the trial court erred in overriding the jury's recommendation of life and that a proportionality review mandates a life sentence under the circumstances of this case. He contends that valid mitigating evidence was presented during the sentencing phase upon which the jury recommendation could have been based.
We agree. The jury override in this case violates the standards set forth in Tedder v. State, 322 So.2d 908 (Fla. 1975). As we reiterated in the recent case of Ferry v. State, 507 So.2d 1373 (Fla. 1987), only when there are no "valid mitigating factors discernable from the record upon which the jury could have based its recommendation" is an override warranted. Id. at 1376. See, e.g., Lusk v. State, 446 So.2d 1038 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). We find that the record before us contains several valid mitigating factors upon which the jury could have relied in reaching its recommendation. As a result, the judge's decision to override that recommendation is improper. Moreover, when viewed in light of our prior decisions in jury-override cases, we find that the death penalty clearly would not be proportional if imposed in this case.
First, we find that sufficient evidence was presented during the sentencing phase to establish a reasonable belief in the minds of jurors that appellant was under the influence of alcohol. The jury in the present case could have weighed this evidence and reasonably concluded that the appellant acted under the effects of alcohol. This Court frequently has reversed jury overrides where the jury could have found alcohol or drug abuse as a mitigating circumstance. Huddleston v. State, 475 So.2d 204, 206 (Fla. 1985); Cannady v. State, 427 So.2d 723, 731 (Fla. 1983); Phippen v. State, 389 So.2d 991, 993 (Fla. 1980); Buckrem v. State, 355 So.2d 111, 113-14 (Fla. 1977). In Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986), for instance, we held improper an override where, among other mitigating factors, there was "some inconclusive evidence that [appellant] had taken drugs the night of the murders" along with "stronger" evidence of a drug abuse problem. Id. at 13. Similarly, in Norris v. State, 429 So.2d 688 (Fla. 1983), we vacated an override sentence because of evidence that appellant suffered *179 a drug problem and claimed to be intoxicated at the time of the murder. Id. at 690. We find that the evidence of intoxication presented in the present case is more substantial than that offered in Amazon and Norris.
Second, we find that the jury reasonably could have concluded that Fead acted under extreme mental and emotional disturbance and duress, partly as a result of his alcohol consumption and partly because of his jealousy. The events leading to the murder essentially constituted a lovers' quarrel. In the past, we have found a jury override improper where the defendant and his roommate-victim after consuming alcohol and sedatives became embroiled in a lovers' quarrel, the defendant proceeded to gag the victim, smother her with a pillow, strangle her with a telephone cord, place her in a garbage bag, douse the body with gasoline and set her afire. Herzog v. State, 439 So.2d 1372, 1374-75 & 1381 (Fla. 1983). Similarly, we have refused to countenance an override where the defendant, jealous that his former wife had taken a new lover, hacked her to death with a machete because of his "passionate obsession." Irizarry v. State, 496 So.2d 822, 825 (Fla. 1986). In Irizarry, we found this conclusion consistent with a line of cases dealing with murders arising from lovers' quarrels or domestic disputes. Ross v. State, 474 So.2d 1170 (Fla. 1985); Blair v. State, 406 So.2d 1103 (Fla. 1981); Kampff v. State, 371 So.2d 1007 (Fla. 1979); Chambers v. State, 339 So.2d 204 (Fla. 1976). We conclude that the facts of the present case place it squarely within this same line of cases.
Third, there was substantial evidence that Fead was a hard worker and provided for the members of his family and children. In the past, we have found that the defendant's qualities as a good father, husband and provider constitute valid mitigating factors that could form the basis of a jury recommendation of life. Thompson v. State, 456 So.2d 444, 448 (Fla. 1984).
Fourth, the jury received testimony that the appellant was a model prisoner during his previous commitment and a model parolee prior to this incident. Moreover, there was testimony that Fead was a hard worker and a good employee, that he could be a productive farm worker within the state prison system, and therefore that he possessed positive personality traits. In the past we have found that such evidence constitutes a valid mitigating factor. McCampbell v. State, 421 So.2d 1072, 1075-76 (Fla. 1982).
Based on our review of the entire record before us, we find that at least four valid mitigating factors exist upon which the jury could have relied. The limited question we must decide is whether a jury of reasonable men and women could conclude, based on this evidence, that death is inappropriate. We are convinced that they could. Clearly, "[t]he facts are not so clear and convincing that no reasonable person could differ that death was the appropriate penalty." Amazon, 487 So.2d at 13. Moreover, we find that a review of our prior decisions in similar jury-override cases compels the conclusion that the death penalty is not proportional and thus inappropriate in this case.
Accordingly, we affirm Fead's conviction, but vacate his sentence of death and remand for the imposition of a life sentence in accordance with the jury's recommendation.
It is so ordered.
McDONALD, C.J., and OVERTON and KOGAN, JJ., concur.
SHAW, J., concurs specially with an opinion.
GRIMES, J., concurs in part and dissents in part with an opinion.
EHRLICH, J., concurs in the conviction, but concurs in the result only to the sentence.
SHAW, Justice, specially concurring.
I feel that Tedder v. State, 322 So.2d 908 (Fla. 1975), is being misapplied. Nevertheless, I agree that life imprisonment is the appropriate sentence. This is not one of the more aggravating and indefensible crimes for which the death penalty is appropriate. *180 State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied sub nom, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
GRIMES, Justice, concurring in part and dissenting in part.
Appellant is a good man, except that sometimes he kills people.
Appellant not only "pulled a pistol out of his boot and shot the victim," but after she fell he straddled her body and shot her twice in the head at point blank range. He later explained that his gun had fired accidentally.
I fully concur with the analysis of appellant's general character. Moreover, his offense was typical of the crime of passion between lovers for which this Court has consistently held that the death penalty is unwarranted. The problem here is that appellant had already been convicted of murdering someone else in the course of trying to kill another girl friend. I do not believe that it is "reasonable" under the principle of Tedder that a person convicted of a second murder should be permitted to escape the death penalty.
As the trial court so aptly stated in the sentencing order:
One might conclude that the Defendant does not represent a threat to certain classes of society  a theory advanced by the testimony of the Defendant's former employers, who are well respected members of the community and testified that they never had any fear of the Defendant. Had this been the first murder that the Defendant committed, some credit might be afforded that position. However, all classes and segments of society are entitled to the same protection.
This Court's consideration of Section 921.141, Florida Statutes, leads conclusively to imposition of the death penalty as constituting the only penalty which is appropriate in this case... . If the death penalty is not for one who repeatedly commits murder... then for whom can it be said that it is reserved?
I would affirm both the judgment and the sentence.