547 So.2d 928 (1989)
Guy Reginald COCHRAN, Appellant,
v.
STATE of Florida, Appellee.
No. 67972.
Supreme Court of Florida.
July 27, 1989.
Rehearing Denied September 15, 1989.
James Marion Moorman, Public Defender, and Douglas S. Connor, Asst. Public Defender, Bartow, for appellant.
*929 Robert A. Butterworth, Atty. Gen., and Joseph R. Bryant, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Guy Reginald Cochran appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction but remand for the imposition of a life sentence in accordance with the jury's recommendation.
On February 7, 1985, the body of Carol Harris was found in a field near Route 301 in Hillsborough County. A day or so later a police officer spotted Harris' BMW and attempted to stop it. The vehicle's occupants fled on foot and the car was impounded. Fingerprints lifted from the automobile were identified as Cochran's and led to his arrest and confession.
At trial, the state introduced Cochran's taped confession in which he asserted that the shooting was not deliberate and he never intended to hurt Harris. Cochran said he approached Harris with a gun, intending to rob her, as she was getting into her car in the Ybor City section of Tampa, Florida. When she screamed, he forced her into her car and drove off. He said he was driving and holding the gun in one hand when Harris jumped at him and tried to stab him. During the struggle, as he tried to steer the car, the gun went off. Cochran also confessed that Harris asked him to take her to a hospital but he got scared and left her on Route 301. He said he later went back to help her but could not find his way to where he had left her.
The medical examiner testified that Harris had been shot once at close range and that the wound track, through the abdomen from left to right horizontally and slightly backward, was consistent with a scenario of the shooter seated on the left side of the victim in an automobile. He also said the victim could have lost consciousness within moments and lived for only a few minutes or could have remained alive and conscious with the wound for as much as an hour.
Police detectives testified that drag marks and the position of the victim's body and clothing indicated the body had been dragged approximately seventeen feet from the highway to where it eventually was found. The police also testified that a fork, but no knife, had been found in the vehicle.
In addition to the medical examiner and crime scene investigators, the state introduced the testimony of Darrell Shorter and Willie Long, who were friends of Cochran. Shorter, who admitted he was in the BMW when the Tampa police car tried to stop it, testified that he saw a sharp instrument that looked like a letter opener on the dash-board of the car. He also testified that "[Cochran] told me that he got the car from a bar on 7th Avenue and that he took the girl somewhere and shot her and that is how he got the car." Long said that when he asked Cochran about the car, Cochran replied that "he got it from a lady and she tried to stab him and that he had to shoot her."
At the penalty phase, the state offered no additional evidence. The defense presented testimony from Dr. Arturo Gonzalez, a psychiatrist; Caroline Barnard, the supervisor of school psychiatric services in the Hillsborough County School District; Susan Watson, Cochran's seventh grade teacher; Dennis Namen, Cochran's high school teacher; several members of Cochran's family; and Detective Kendall Glenn, who initially questioned Cochran regarding the homicide.
The jury recommended life imprisonment. The trial judge, however, concluded that the aggravating circumstances substantially outweighed the mitigating circumstances and imposed the death penalty. The judge stated that Cochran's prior conviction of another capital felony, which had been unknown to the jury, was "substantially the basis" for the jury override.

Guilt Phase
Appellant challenges his conviction of first-degree murder on the ground that there was insufficient evidence to prove premeditation. He argues that the state's circumstantial evidence on the element of *930 premeditation was not legally sufficient because it did not exclude the hypothesis of an unpremeditated shooting. Assuming arguendo that the jury's verdict was limited to premeditated murder,[1] we find the evidence in this case sufficient to support such a verdict.
Appellant correctly points out that in order to prove a fact by circumstantial evidence, the evidence must be inconsistent with any reasonable hypothesis of innocence. McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977). Where the element of premeditation is sought to be established by circumstantial evidence, the evidence relied upon by the state must be inconsistent with every other reasonable inference. Wilson v. State, 493 So.2d 1019 (Fla. 1986); Hall v. State, 403 So.2d 1321 (Fla. 1981).
But the question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, the verdict will not be reversed on appeal. Heiney v. State, 447 So.2d 210, 212 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984); Williams v. State, 437 So.2d 133 (Fla. 1983), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 164 (1984); Rose v. State, 425 So.2d 521 (Fla. 1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983). The circumstantial evidence standard does not require the jury to believe the defense version of facts on which the state has produced conflicting evidence, and the state, as appellee, is entitled to a view of any conflicting evidence in the light most favorable to the jury's verdict. Buenoano v. State, 478 So.2d 387 (Fla. 1st DCA 1985), review dismissed, 504 So.2d 762 (Fla. 1987).
With these principles in mind, we find the evidence sufficient to support a verdict of premeditated murder. Cochran claimed that the shooting was accidental, that he "let [the victim] out of the car" after he panicked, and later attempted to find her to take her to the hospital. The evidence showed, however, that the victim's body was dragged seventeen feet from the roadway. Given this conflict in the physical evidence, the jury properly could have concluded that appellant's version of events was untruthful. We find sufficient competent evidence to support a finding of premeditation and accept the jury's evaluation of that evidence. See Songer v. State, 322 So.2d 481 (Fla. 1975) (rejecting contention that a defendant's interpretation of circumstantial evidence should be accepted completely unless it is specifically contradicted), vacated on other grounds, 430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977).

Penalty Phase
Appellant's first argument, that the trial court erred in refusing to allow him to present evidence that the death penalty is imposed in a racially discriminatory manner, has been foreclosed by the recent United States Supreme Court decision in McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).
Appellant next asserts that the trial court erred in considering letters from the victim's next-of-kin. Because of our resolution of the next two points, we find it unnecessary to address this claim of error.
In his fourth point, appellant argues that the trial court erred in finding that this murder was especially heinous, atrocious, or cruel.[2] In support of this finding, the trial court stated:

*931 (h) The capital felony was especially heinnous [sic], atrocious, and cruel. The defendant exhibited a lack of remorse by taking the wounded victim to a remote area, probably still alive, rather than taking some action which could result in her getting medical attention for the injury, thus reflecting a cold and calculating conscienceless act.
We agree with appellant that this finding does not comport with prior decisions of this Court defining the parameters of the heinous, atrocious, or cruel aggravating factor. Lack of remorse is clearly improper as an aggravating factor or enhancement of an aggravating factor. Pope v. State, 441 So.2d 1073 (Fla. 1983). Failure to get medical attention for the victim does not make a murder especially heinous, atrocious, or cruel. Teffeteller v. State, 439 So.2d 840, 846 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984); Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). Nor can the defendant's acts after the victim is unconscious support this aggravating circumstance. See Jackson v. State, 451 So.2d 458 (Fla. 1984); Clark v. State, 443 So.2d 973 (Fla. 1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2400, 81 L.Ed.2d 356 (1984). Our cases make clear that where, as here, death results from a single gunshot and there are no additional acts of torture or harm, this aggravating circumstance does not apply. Jackson v. State, 502 So.2d 409 (Fla. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 686 (1987); Fleming v. State, 374 So.2d 954 (Fla. 1979).
Lastly, we address appellant's argument that the trial court's override of the jury's recommendation of life does not meet the standard set out in Tedder. In Tedder, we held that in order to sustain a sentence of death following a jury recommendation of life, the facts suggesting death must be so clear and convincing that virtually no reasonable person could differ. 322 So.2d at 910.
At the sentencing hearing,[3] in response to the prosecutor's inquiry, the judge explained the override as follows:
MR. ATKINSON: Your honor, for the record, again, so it's clear for appellate court purposes, does the Court also find that in the Harris case based on the totality of the aggravating circumstances that, in fact, the jury's recommendation of life was not reasonable under the additional factors that the Court had available to it. That is, the additional conviction in the Arbelaez murder?
THE COURT: That is precisely the basis that is substantially the basis from which the Court has made its decision to override the recommendation of the jury in that case.
Under our law, it was proper for the trial court to take into consideration appellant's previous conviction in the Arbelaez case, even though that conviction was not presented to the jury. Spaziano v. State, 433 So.2d 508, 511 (Fla. 1983), aff'd, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Porter v. State, 429 So.2d 293 (Fla.), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). This circumstance, however, does not alter this Court's responsibility to review the sentence under the Tedder standard. When the sentencing judge is presented with evidence not considered by the jury, the jury's recommendation still retains great weight. Although this Court has upheld jury overrides in cases where *932 the trial court had before it evidence in aggravation not considered by the jury, we found in each case that death was imposed consistently with Tedder. See Spaziano; Porter; White. After careful consideration, we conclude that the override in the instant case was not warranted.
The mitigating evidence in this case was extensive. The psychiatrist testified that due to a long-standing mental deficiency (IQ of 70), Cochran was likely to become emotionally disturbed under stress and substantially impaired in his ability to conform his conduct to the law.
Cochran's former teachers testified that he had a history of crippling emotional problems and a severe learning disability. His seventh grade teacher testified that despite his handicap, Cochran wanted to learn to read and was highly motivated in class. Dennis Namen, Cochran's high school SLD (Specific Learning Disabilities) teacher, testified that Cochran's disabilities severly limited his ability to progress in school or hold even the simplest job. Namen testified that in February 1985, just days before the shooting, Cochran came to him and asked for help in getting a job. Cochran agreed the military was a good idea but Namen was told by the military recruiter that Cochran was unqualified due to his low intelligence and learning disability.
Detective Glenn testified that Cochran said he felt "real bad" after the shooting and was confused about what to do. Detective Glenn stated that Cochran was crying throughout his statement and appeared remorseful. Detective Glenn said he believed Cochran's statement.
Appellant also presented mitigating evidence relating to his family background and the pressure he was under to raise money to support his child. This included testimony that Cochran was deeply depressed at the time of the murder because the mother of his child had broken off the relationship and prevented him from seeing the baby.
Much of this testimony was accepted by the trial court as mitigating evidence.[4] The trial court also properly found that appellant's age at the time of the crime, eighteen, was a mitigating factor. See § 921.141(6)(g), Fla. Stat. (1985).
We believe the mitigating evidence is sufficient to support a life sentence. See Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986); Cannady v. State, 427 So.2d 723 (Fla. 1983); Richardson v. State, 437 So.2d 1091 (Fla. 1983). We note that while capital defendants often present testimony of family members and psychiatrists in mitigation, it is unusual to have classroom teachers and a police detective testify. A jury might give the testimony of such witnesses great weight. The facts in this case, including appellant's prior conviction of a capital felony,[5] are not so clear and convincing that no reasonable person could differ that death is the appropriate penalty.
We are mindful of the concerns raised by the dissent. Without question, the trial court was authorized to weigh in aggravation the fact that this defendant was convicted of a prior murder. However, this aggravating factor alone does not and cannot automatically nullify a jury's life recommendation, as the dissent suggests. This Court has directly held to the contrary. Fead v. State, 512 So.2d 176 (Fla. 1987) (jury override improper despite prior murder conviction where mitigating evidence *933 supported jury's life recommendation). Both judge and jury still must weigh this aggravating factor against the available mitigating evidence.
Indeed, to suggest that death always is justified when a defendant previously has been convicted of murder is tantamount to saying that the judge need not consider the mitigating evidence at all in such instances. The United States Supreme Court consistently has overturned cases in which mitigating evidence was deliberately and directly ignored. Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Accord Woodson v. North Carolina, 428 U.S. 280, 286-87, 96 S.Ct. 2978, 2982-83, 49 L.Ed.2d 944 (1976).
Finally, we agree with the dissent that "legal precedent consists more in what courts do than in what they say." However, in expounding upon this point to prove that Tedder has not been applied with the force suggested by its language, the dissent draws entirely from cases occurring in 1984 or earlier. This is not indicative of what the present court does, as Justice Shaw noted in his special concurrence to Grossman v. State, 525 So.2d 833, 851 (Fla. 1988) (Shaw, J., specially concurring):
During 1984-85, we affirmed on direct appeal trial judge overrides in eleven of fifteen cases, seventy-three percent. By contrast, during 1986 and 1987, we have affirmed overrides in only two of eleven cases, less than twenty percent. This current reversal rate of over eighty percent is a strong indicator to judges that they should place less reliance on their independent weighing of aggravation and mitigation... .
Clearly, since 1985 the Court has determined that Tedder means precisely what it says, that the judge must concur with the jury's life recommendation unless "the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ." Tedder, 322 So.2d at 910.
Accordingly, we affirm the judgment of guilt, but vacate the sentence of death with directions that appellant be sentenced to life imprisonment.
It is so ordered.
OVERTON, McDONALD and KOGAN, JJ., concur.
EHRLICH, C.J., concurs in part and dissents in part with an opinion, in which SHAW and GRIMES, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion.
EHRLICH, Chief Justice, concurring in part and dissenting in part.
I concur as to guilt but dissent as to the sentence.
The trial judge has been entrusted by the legislature with the awesome responsibility to impose sentence in death penalty cases. § 921.141(3), Fla. Stat. (1987). The jury's responsibility, likewise imposed by the legislature, is to make a nonbinding recommendation. § 921.141(2), Fla. Stat. (1987). The majority opinion emasculates the statute and the authority of the sentencing judge.
The psychiatrist who testified in the penalty phase said that Cochran's mental deficiency was borderline. He did not see Cochran as emotionally disturbed, nor did he think defendant's ability to conform his conduct to requirements of the law was severely impaired. He did not believe that Cochran was emotionally handicapped. A psychologist testified that Cochran was not retarded but did have a severe learning disability.
The trial judge found every mitigating circumstance that the evidence would support.
In the state's case, in the guilt phase, a statement Cochran had given to the police was read to the jury. In that statement, Cochran said he really did not intend to kill the victim, it was an accident, and that he had never killed before. The truth, of *934 which the jury was unaware, is that four days before the homicide in question Cochran shot and killed another person during the course of a robbery. It just so happened that the trial judge in this case was also the trial judge in the case of the earlier murder. In murder number one, the jury recommended death, but the trial judge after finding two aggravating factors (previous conviction of a capital felony and the crime committed during robbery) and the identical mitigating factors that he found in this case, did not follow the jury's recommendation but imposed a life sentence with a mandatory minimum of twenty-five years.
In this case, the same trial judge found four aggravating factors, only three of which are valid (prior conviction of a capital felony, murder committed for pecuniary gain, and murder committed in the course of a kidnapping). He found one more aggravating factor than he found in the first murder, but of determinative significance was the fact that Cochran had killed another person four days before the instant murder, and this prior homicide was the basis of the trial court's override. In my opinion, this was a reasonable basis for the judge to impose the sentence of death. In murder number one, he found that the mitigating factors outweighed the aggravating factors, despite a jury recommendation of death which was entitled to great weight. Whereas, in connection with the instant murder, the trial judge found that the aggravating factors outweighed the mitigating factors, and included in the statutorily mandated weighing process was the fact of murder number one, which fact was not known to the jury. While the majority pays lip service to prior decisions of this Court that "it was proper for the trial court to take into consideration appellant's previous conviction in the Arbelaez[*] case, even though that conviction was not presented to the jury," at 931, it in effect holds that the trial judge was in error in doing so here. I can conceive of no more cogent reason for an override than that utilized by the trial judge here.
I cannot accept the majority's conclusion that "the mitigating evidence is sufficient to support a life sentence." At 932. Much of the testimony related to Cochran's shortcomings as a student. Dr. Gonzalez did not see defendant as emotionally disturbed, but did say that multiple stresses would tend to disorganize the defendant. The only stress discernible from the record which may have caused Cochran "to become emotionally disturbed" was the victim's efforts to free herself. Surely, any such stress brought about by a defendant's own conduct cannot be used to lessen or reduce his culpability or the enormity of his crime.
It is self-evident that, if the jury had not been under the impression that Cochran "had never killed before" but had been made aware of the fact that he had killed another only four days before this murder, the jury would have recommended death. The facts in this case are so clear and convincing that no reasonable person could differ that death is the appropriate penalty. The fact that Cochran committed first-degree murder only days before the commission of this murder, not known to the jury, but known to the trial judge, fully justifies and supports the override.
In Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), the Court advised that to impose a death sentence where the jury has recommended life imprisonment rather than death, "the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." This often quoted formulation expresses a preferred policy and provides a general principle to which sentencing judges and this Court may look in evaluating an override sentence. However, as all students of the common-law tradition know, legal precedent consists more of what courts do than what they say. So we must look to this Court's decisions applying the Tedder rule if we are to understand its proper meaning.
As refined by subsequent decisions, Tedder requires that the jury's life recommendation *935 be followed if there is a reasonable basis for it in the evidence. See, e.g., Porter v. State, 429 So.2d 293, 296 (Fla.) (override proper where jury was probably influenced in favor of life by an improper factor), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). But the reasonableness of the jury's recommendation should be evaluated in light of all the evidence considered, see, e.g., Hoy v. State, 353 So.2d 826, 832 (Fla. 1977) (jury override sentence was proper "under the totality of the circumstances"), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978), including that in the judge's possession which was not revealed to the jury. As the majority opinion acknowledges, it is permissible for the sentencing judge to receive evidence of aggravating factors not provided to the jury and such evidence can provide a basis for overriding the jury's life recommendation. Spaziano v. State, 433 So.2d 508 (Fla. 1983), aff'd, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Porter v. State, 429 So.2d 293 (Fla.), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). In all of these cases, there was information presented that could conceivably have influenced the jury to recommend life. Spaziano v. State, 433 So.2d at 512 (defendant was not "normal" and his crime was "bizarre") (McDonald, J., dissenting); Porter v. State, 429 So.2d at 296 n. 2 (the mitigating evidence was found by the judge to carry "little or no weight"); White v. State, 403 So.2d at 340 (defendant was non-triggerman who acquiesced in the murders). Thus, a mechanistic application of the Tedder dictum would have resulted in reversals of the death sentences in these cases. Our death penalty decisions recognize that to treat the jury recommendation as binding would violate the eighth amendment as interpreted in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Spaziano v. State, 433 So.2d at 512; Douglas v. State, 373 So.2d 895 (Fla. 1979). It would also violate the legislative directive that the jury's determination should be "advisory," a recommendation and nothing more. § 921.141(2), (3), Fla. Stat. (1987). This Court's experience with the variability and subjectiveness of juries' evaluations in sentencing validates and reinforces the legislative policy and the constitutional principle.
The Tedder holding views an override from the perspective of the jury whose sole responsibility in the sentencing process is to make a recommendation to the trial judge, the statutory sentencer. It seems to me that whether a jury recommendation of life should be followed by the trial judge should be determined from the perspective of the sentencer. Is there a reasonable basis in the record to support the override of the jury recommendation? If the facts known to the sentencer provide a reasonable basis for the imposition of the death sentence, despite a jury recommendation of life, the sentence should be upheld.
The majority relies upon Fead v. State, 512 So.2d 176 (Fla. 1987), in support of its position. Fead is wholly and totally inapposite. First, the jury was not misled by defendant Fead. It knew of his prior homicide conviction which was for second-degree murder. In contrast, this defendant lied and misled the jury as to his prior misconduct, which was for first-degree murder. Second, Fead involved a violent domestic argument which led to the homicide. Fead's "offense was typical of the crime of passion between lovers for which this Court has consistently held that the death penalty is unwarranted." Fead, 512 So.2d at 180 (Grimes, J., concurring in part and dissenting in part). This case involved a homicide during the course of a robbery and kidnapping in marked contrast to the facts in Fead. Finally, the trial judge in Fead was possessed of no more information about that defendant than the jury, whereas in this case, the trial judge knew that defendant had killed just four days before this homicide and that defendant had lied to the jury as to such misconduct. Fead is indeed a slender, diaphanous reed on which the Court leans for support.
The majority appears to mischaracterize this dissent as standing for the proposition that a prior conviction of murder always *936 warrants the death penalty. That at best is a simplistic misreading of the dissent. All I have endeavored to say is that the trial judge is the statutory sentencer and that he had information not known to the jury which provided a most reasonable basis for his override of the jury recommendation. We should uphold such an override where, as in this case, there is a reasonable basis in the record for so doing.
In summary, the following observations can be made. The trial judge had information that was relevant to the sentencing decision. As the majority acknowledges, it was proper for the trial judge to consider the information even though the jury had not been apprised of it. The information in the possession of the judge constituted conclusive evidence of an aggravating factor that weighed heavily in favor of a sentence of death. The jury, not having had the benefit of the information in question, did not give it consideration in arriving at its sentencing recommendation. Under such circumstances, as several past decisions of this Court clearly hold, the aggravating factor found by the judge and not revealed to the jury provided a valid basis for imposing sentence inconsistently with the jury's recommendation of life imprisonment. In fact the jury had received evidence that appeared to negate the existence of the facts actually known to the trial judge. Moreover, no reasonable argument can be made that the jury was influenced by mitigating factors ignored by the judge, because the judge found and took into consideration every mitigating factor suggested by the evidence. Imposition of a sentence of death under such circumstances satisfies the Tedder rule.
The instant case, where the judge but not the jury knew of defendant's conviction of another first-degree murder, illustrates with special clarity the reasons why, even after giving full effect to the broad implications of the Tedder rule, the ultimate responsibility for imposing sentence remains with the trial judge, while the sentencing verdict of the jury, although it weighs heavily in the balance, is in the end an advisory verdict and nothing more.
BARKETT, Justice, concurring in part and dissenting in part.
I concur in that portion of the Court's judgment that vacates the death sentence and orders the imposition of a sentence of life imprisonment. However, I would go further and order the sentence reduced to second-degree murder.
There is no question that there was sufficient evidence in this case to support a conviction for felony murder. Unfortunately, however, the jury did not so find. As the majority notes in footnote 1, the jury was given alternatives in the jury verdict form. It chose to check the box marked murder in the first degree instead of felony murder in the first degree. Given the trial judge's instruction defining murder in the first degree as a killing with premeditation, I believe the jury verdict of guilty of murder in the first degree must be interpreted as a finding of premeditated murder.
I do not believe the state has presented sufficient, competent evidence to support a conviction of premeditated murder. As the majority recognizes, Florida law long has adhered to a special and strict standard of proof in circumstantial evidence cases. This standard is: "Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977) (emphasis supplied). See also Jaramillo v. State, 417 So.2d 257, 257 (Fla. 1982).
In applying the standard, "the version of events related by the defense must be believed if the circumstances do not show that version to be false." McArthur, 351 So.2d at 976 n. 12 (emphasis supplied). Accord Peek v. State, 395 So.2d 492, 495 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). The above stated principle has been the law in this state for at least sixty years, see Holton v. State, 87 Fla. 65, 99 So. 244 (1924), and our courts consistently have reversed *937 criminal convictions in circumstantial evidence cases when the evidence failed as a matter of law to negate the defendant's exonerating trial testimony or statements to the police. Jaramillo; McArthur; Driggers v. State, 164 So.2d 200 (Fla. 1964); Mayo v. State, 71 So.2d 899 (Fla. 1954); Riley v. State, 40 So.2d 774 (Fla. 1949); Kelly v. State, 99 Fla. 387, 126 So. 366 (1930); Metrie v. State, 98 Fla. 1228, 125 So. 352 (1930); Davis v. State, 90 Fla. 816, 107 So. 245 (1925); Holton v. State, 87 Fla. 65, 99 So. 244 (1924); Fudge v. State, 75 Fla. 441, 78 So. 510 (1918). See also discussion and cases collected in Jones v. State, 466 So.2d 301 (Fla. 3d DCA 1985) (Hubbert, J., dissenting; appendix to dissenting opinion), approved, 485 So.2d 1283 (Fla. 1986).
These same principles apply when circumstantial evidence is relied upon to establish the requisite criminal intent. As this Court explained in Davis,
[t]he value of circumstantial evidence, and its effect as proof, depends upon the conclusive nature and tendency of the circumstances relied upon to establish the controverted fact. If any fact essential to a conviction is not legally established to a moral certainty, the evidence is inconclusive and cannot be said to be sufficient in law to satisfy the mind and conscience of a jury.

90 Fla. at 819, 107 So. at 246 (emphasis supplied).
Thus, when the state's proof fails to exclude a reasonable hypothesis that the homicide occurred other than by premeditated design, a verdict of first-degree murder cannot be sustained. Hall v. State, 403 So.2d 1319 (Fla. 1981); Jenkins v. State, 120 Fla. 26, 161 So. 840 (1935); Tien Wang v. State, 426 So.2d 1004 (Fla. 3d DCA), review denied, 434 So.2d 889 (Fla. 1983).
In Hall, two would-be convenience store robbers shot and killed a deputy sheriff in a parking lot behind the store. Two eyewitnesses testified they saw Hall and his accomplice approach the deputy, who carried a shotgun, and saw one of the two put a bag on the ground. No one saw the deputy shot. This Court reversed Hall's conviction for first-degree murder, reasoning:
The evidence of the defendants' homicidal intent is subject to conflicting interpretations. One is that Hall or Ruffin seized Coburn's gun intending to kill him, took aim, and fired. If this were true, then this killing was premeditated. There are other interpretations, one of which is that Coburn struggled with one or both of the defendants until either Hall or Ruffin pulled the trigger without intending to kill. If this were true, then the killing was not premeditated.
... While the circumstantial evidence in this case is inconsistent with any reasonable hypothesis of innocence as to the homicide of Deputy Coburn, it is not inconsistent with any reasonable exculpatory hypothesis as to the existence of premediation. Therefore, the evidence is insufficient to prove premeditation, and the conviction for first-degree murder is reversed.
403 So.2d at 1320-21.
In the present case, the state's theory of premeditated murder, as presented at trial, was that Cochran approached the victim with the intent to rob and kill her; he never had any intention of leaving an eyewitness to the robbery; and he drove the car over to the east side for the purpose of finding a place to dump the body.
Cochran, on the other hand, maintained that robbery of the victim was his sole aim; that when she screamed, he panicked and forced her into the car; that he never intended to harm her; and that he shot the victim when she lunged at him with a knife as he was driving down the highway.
In support of its asserted theory of premeditated murder, the state presented no direct evidence. We thus must determine whether the circumstantial evidence controverts appellant's story. Although the reasonableness of a hypothesis of innocence is a jury question, it is the court's duty to determine whether the state has been able to produce sufficient, competent evidence to contradict the defendant's story. This is so because if the state's circumstantial evidence reasonably supports the defendant's *938 hypothesis as to the existence of premeditation, then every reasonable hypothesis of an unpremeditated killing has not been excluded. See Fowler v. State, 492 So.2d 1344, 1348 (Fla. 1st DCA 1986), review denied, 503 So.2d 328 (Fla. 1987).
Viewed in the light most favorable to the state, the evidence established the following. At some time prior to the murder, Cochran borrowed a gun from a friend. He forced the victim into her car at gunpoint late at night, drove her across town, shot her once in the abdomen, and dumped her off on the side of the road. He took the money she had on her and continued to ride around in her car for several days. The state argues that these circumstances are consistent with only one conclusion  premeditated murder. I cannot agree.
Unquestionably, the circumstances are consistent with premeditated murder. But our law demands that criminal convictions rest on more than "suspicious circumstances." Mayo, 71 So.2d at 904. As the Mayo court explained, "Circumstantial evidence is never sufficient to support a conviction where, after there is assumed all to be proved which the evidence tends to prove, another hypothesis still may be true, because it is the actual exclusion of each other hypothesis which clothes mere circumstances with the force of proof." Id. (emphasis supplied).
The circumstantial evidence also is consistent with Cochran's story. Nothing in the testimony of Darrell Shorter or any other witness contradicts Cochran's statement. The medical evidence of a single bullet wound crossing the victim's abdomen was entirely consistent with Cochran's statement that he shot the victim when she lunged at him.
The only evidence remotely inconsistent with Cochran's statement is the police testimony indicating that the victim was dragged a short distance off the road rather than let out or pushed out of the car. I do not believe this evidence is sufficiently probative to controvert Cochran's account of the actual shooting. Moreover, if the victim was still alive at the time she was removed from the car,[*] the fact that Cochran left her by the side of the road instead of shooting her a second time supports his version of what happened and not the state's theory. If she was dead at the time she was removed from the car, the evidence of dragging is irrelevant to premeditation.
Premeditation may be inferred from the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. Larry v. State, 104 So.2d 352, 354 (Fla. 1958). The state's case does not satisfy any of these criteria. Nor have I found any authority that supports a finding of premeditation from the circumstances of a killing by a single shot to the abdomen resulting from a struggle. Cf. Meade v. State, 96 So.2d 776 (Fla. 1957), cert. denied, 355 U.S. 920, 78 S.Ct. 351, 2 L.Ed.2d 279 (1958). The state's circumstantial evidence in this case falls far short of that found sufficient to raise a jury question in our prior cases. See Huff v. State, 495 So.2d 145 (Fla. 1986) (all of the evidence adduced at trial, with the exception of appellant's testimony, pointed to his guilt); Williams v. State, 437 So.2d 133 (Fla. 1983) (evidence sufficient to support the jury's finding of premeditation where jury was told that telephone conversations between the victim and defendant had been upsetting to the victim, prior stormy relationship had existed between the victim and defendant, defendant had borrowed gun the evening prior to the shooting and complained that victim had been with another man, and physical evidence showed that defendant's story, that crime was committed by an unknown assailant, was clearly unreasonable), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 164 (1984); Peek v. State (appellant's version of events, that he entered the victim's car the morning following the murder, was discredited in view of his prior inconsistent statement that he had *939 never been in the vicinity of the park); Blair v. State, 406 So.2d 1103 (Fla. 1981) (defendant's version, that wife's death was result of violent struggle in which weapon discharged as a result, was "simply unbelievable" in view of evidence that defendant had prepared hole for burial prior to shooting and had arranged to have children out of the house at time of shooting).
After considering all of the evidence, scant that it is, and resolving all conflicts and reasonable inferences in favor of the state, I believe a reasonable alternative to premeditated murder remains intact. The state has produced no competent evidence directly inconsistent with appellant's version of how the shooting occurred. Because the jury found premeditated murder instead of felony murder and there is insufficient evidence to support premeditated murder, I believe we have no other recourse under section 924.34, Florida Statutes (1985), than to direct the trial court to enter judgment for second-degree murder. See Hall.
NOTES
[1] The verdict form listed as alternative verdicts: (a) murder in the first degree; (b) felony murder, first degree; (c) murder in the second degree; (d) murder in the third degree; (e) manslaughter; (f) not guilty. The court defined alternative (a) as a premeditated killing. Because the jury checked alternative (a), appellant argues that the verdict must be interpreted as a finding of premeditated murder. The state contends that because the jury was specifically instructed to choose only one of the six alternatives, alternative (a) should be interpreted as a finding of guilt of both premeditated and felony murder. Because we conclude there was sufficient evidence to support a finding of premeditation, we need not resolve this dispute.
[2] Appellant does not challenge the remaining aggravating circumstances found by the trial court: previous conviction of a capital felony, murder committed for pecuniary gain, and murder committed in the course of a kidnapping.
[3] The procedural posture of this case is somewhat unusual. The trial, including guilt and penalty phases, took place July 8-11, 1985. At the conclusion of the penalty phase, the trial judge announced that sentencing would be postponed pending receipt of a PSI report. Thereafter, appellant was tried and convicted of the murder of Leon Arbelaez, who was killed four days before Carol Harris was killed. On October 11, 1985, the trial judge sentenced appellant in both cases. In the Arbelaez case, the judge found two aggravating circumstances (previous conviction of capital felony, crime committed during a robbery) and the same four mitigating circumstances found in the instant case. He imposed a life sentence following a jury recommendation of death. The propriety of that sentence is not before this Court.
[4] In its sentencing memorandum, the trial court set out the mitigating circumstances as follows:

The capital felony was committed while the defendant was under the influence of an emotional disturbance. The defendant was borderline retarded and had difficulty in dealing with stress conditions. He was making very little headway towards completion of his high school diploma and his girl friend, the mother of his child, was putting demands on him for monies for the child's support.
(g) The age of the defendant at the time of the crime was eighteen.
[5] In the Arbelaez case, Cochran pulled a gun on a drug dealer outside a bar and demanded his money. When the victim advanced on Cochran, Cochran backed up and fell over a planter. The victim grabbed Cochran and attempted to take his gun. Cochran shot the victim in the chest and fled.
[*] The case involved murder victim number one.
[*] Although the victim's condition at the time she was removed from the car is unknown, according to both state and defense theories, she was still alive at this time.