IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

RICHARD KEVIN KLINE,

      Appellant,

v.                                     CASE NO. 1D16-4338

STATE OF FLORIDA,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

Opinion filed August 10, 2017.

An appeal from the Circuit Court for Escambia County.
Scott Duncan, Judge.

Andy Thomas, Public Defender, Greg Caracci, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Jason W. Rodriguez, Assistant Attorney General, Tallahassee, for Appellee.

JAY, J.

      Appellant was adjudged guilty and sentenced to life imprisonment for the second-degree murder of his wife. On appeal, he argues that the trial court erred in denying his motion for judgment of acquittal because the evidence presented by the

State was wholly circumstantial and not inconsistent with his reasonable hypothesis of innocence. Our standard of review is de novo. Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002). We affirm Appellant's judgment and sentence as being supported by competent substantial evidence, *id.,* but write to explain why we find this case to be distinguishable from the Florida Supreme Court's recent application of the circumstantial evidence rule in *Wright v. State,* 42 Fla. L. Weekly S587 (Fla. May 11, 2017).

Both this case and *Wright* involved a murdered victim who shared a personal relationship with the defendant, with no definitive DNA or other physical evidence that directly connected either defendant to the crime scene—classic examples of the State's case being based entirely on circumstantial evidence. In *Wright*, the supreme court reiterated the familiar tenet that "where . . . the evidence of guilt is wholly circumstantial, 'not only must the evidence be sufficient to establish each element of the offense,' it must also 'be inconsistent with any reasonable hypothesis of innocence proposed by the defendant.'" 42 Fla. L. Weekly at S590 (quoting *Twilegar v. State,* 42 So. 3d 177, 188 (Fla. 2010)). The supreme court continued: "Th[is] special standard requires that the circumstances lead to a reasonable and moral certainty that the accused and no one else committed the offense charged. It is not sufficient that the facts create a strong probability of, and be consistent with, guilt. They must be inconsistent with innocence." *Id.* (internal quotation marks

2

omitted) (quoting *Lindsey v. State,* 14 So. 3d 211, 215 (Fla. 2009)). More importantly, the supreme court stressed that "suspicions alone cannot satisfy the State's burden of proving guilt beyond a reasonable doubt," rather, "it is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict." *Id.* at S590-91 (internal quotation marks omitted) (quoting *Dausch v. State,* 141 So. 3d 513, 518 (Fla. 2014) (quoting *Ballard v. State,* 923 So. 2d 475, 482 (Fla. 2006))).

Applying these principles to the facts in *Wright*, the supreme court unanimously concluded that the trial court erred in denying Wright's motion for a judgment of acquittal. However, applying this same analysis to the evidence in this case, our facts mandate a different conclusion.

As to the defendant in *Wright*—who was immediately considered by the police to be the prime suspect—the supreme court remarked that "none of the evidence presented at trial directly tied Wright to the murders. Most of the State's evidence was intended to show that Wright had a motive to commit the murders and that other potential suspects did not." *Wright,* 42 Fla. L. Weekly at S591. That motive arose from a paternity action that the victim filed against Wright just prior to her death. But the evidence showed that the victim's relationship with Wright had ended over a year before she was murdered and that the victim had not seen Wright during that extended period of time. Moreover, Wright's alibi went unrebutted. He made no

3

inculpatory statements; there was no fingerprint, footprint, blood, fiber, pattern impression, or other physical evidence tying Wright to the crime scene; there was no "cell tower" evidence placing Wright in the vicinity of the crime scene; and, as mentioned earlier, the DNA evidence was "equivocal." *Id.*

There were, however, multiple other players involved in the victim's life at the time of her murder: she had had several lovers after her relationship with Wright ended (including one of the first police officers who responded to the murder scene); she frequently threw parties at, and sold drugs from, her home; and she had an ex-husband who used to beat her. Importantly, her adult daughter, with whom she had a volatile relationship, was said to have had a "$540,000 motive to kill"—i.e., to collect on the victim's life insurance policies. *Id.* Indeed, the evidence revealed that shortly after her mother's death, the daughter called her mother's place of employment to inquire whether she possessed any life insurance policies.

Furthermore, it was learned during the investigation that the daughter and one of her boyfriends had been in the victim's residence within days before the victim's body was discovered, having gained access by a key the victim was known to have kept hidden outside. As the supreme court observed, "[t]he only evidence presented by the State to prove that Wright was the murderer is the fact that he had motive and opportunity. But while motive and opportunity might create a suspicion that Wright committed the murders, even deep suspicions are not sufficient to sustain the

4

convictions." *Id.* The court was especially concerned with the fact that for the jury to have arrived at a conclusion that Wright was guilty, it necessarily had to base its conviction on impermissibly stacked inferences. In the end, the supreme court declared:

> The evidence presented in this purely circumstantial case does not establish "a reasonable and moral certainty that the accused and no one else committed the offense[s] charged." *Lindsey*, 14 So. 3d at 215. . . . Although the facts established at trial support a strong suspicion of guilt, they are not inconsistent with innocence. We therefore conclude that the evidence is insufficient to sustain Wright's convictions.

42 Fla. L. Weekly at S592.

Conversely, in this case, the State's circumstantial evidence did not lack the causal connection the supreme court concluded was absent in *Wright*. Here, the evidence singularly pointed to Appellant as the only possible suspect. Appellant was married to and, at all times pertinent, was living with the victim. The State's evidence, though circumstantial, connected Appellant to the crime scene through a firm timeline. It established that Appellant's marriage was an unhappy one, full of tension and rage. It placed Appellant in the home on the morning of October 3, 2014—the last day his wife was known to have been alive—as evidenced by the conclusion of an on-line Skype conversation between the victim and a third party at 1:54 a.m. on October 3. By his own admission, Appellant drove away from his home at approximately 8:30 a.m. on the morning of October 3. He embarked on what proved to be a meandering road trip aimed, eventually, at a destination in Tennessee,

5

where he hoped to secure a job as a long-haul trucker out of Nashville. His car was found packed with a majority of his clothes, his golf clubs, a cooler filled with food and drink, a road map, and most of his wife's and deceased mother-in-law's jewelry.

Prior to his journey, he cleaned out the parties' bank accounts. Along the way, he stopped at a motel in Georgia to write a letter to his ex-wife (and recent lover), who was the mother of his only daughter. In the letter, he betrayed his declared love for the victim by describing her as an anchor dragging him down "to the bottom of the ocean," his "nightmare," his "path to hell," and the one person who fomented hatred in him. He apologized for leaving his ex-wife and daughter "in a situation that was not going to be easy," a statement that he later claimed proved his statements regarding his wife were not inculpatory, but evidence that he was suicidal. The letter arrived at the ex-wife's home in a package containing gift cards for her and the daughter, as well as his financial documents and cell phone. However, the evidence showed that Appellant later purchased a new cell phone.

According to his defense, while Appellant was harboring suicidal ideations in Georgia, his wife was brutally beaten and suffocated to death in their home by an unknown assailant, who locked the victim in the parties' shared bedroom and then exited the house, locking the front door behind him. Appellant maintained that after procuring the job in Nashville, his plan was to commit suicide by means of a trucking

6

accident. There was no evidence of a forced entry into the home and no evidence that an unidentified intruder had been in the home.

What is compelling about the foregoing narrative, in comparison to the evidence presented in *Wright*, is, first, the presence of a comprehensive chronology of Appellant's perambulations during the period when the medical examiner estimated his wife was murdered. His wife's body was discovered by law enforcement on October 8, 2014, after her son (by another marriage) called law enforcement to come to the home because he believed that something was wrong: He had not heard from his mother in six days; Appellant's ex-wife had called him that very evening—the evening of Appellant's daughter's birthday—angry over the fact that Appellant had not called his daughter on her birthday as was his custom, and asking him to go to the house; the home was locked and dark; the parties' car, that was always left at home for the wife to use, was missing; and access was gained to the inside of the home only by the son's key, which he gave to the police officers. It was readily apparent that the wife's body had been dragged into the bedroom, and it was noted that her computer was still running in the adjoining office—the same computer that she was last known to have used prior to Appellant's leaving the residence. The State presented as a witness the man that the victim had been Skyping with in the early morning hours of October 3, 2014—and with whom she was having

an on-line affair—who became concerned when their conversation did not later resume and she did not respond to any of his ensuing messages.

Equally significant, within the early days of the investigation, law enforcement officers were able to utilize GPS tracking made available from the automobile dealership through which the parties' car was financed to specifically track each of the movements of the parties' vehicle—from the day that Appellant left his home until the day that he was apprehended in Tennessee.

The second striking distinction between this case and *Wright* is the implausibility of Appellant's hypothesis of innocence and the evidence the State presented that contradicted Appellant's hypothesis. The rule remains that "[u]nder the circumstantial evidence standard, when there is an inconsistency between the defendant's theory of innocence and the evidence, when viewed in a light most favorable to the State, the question is one for the finder of fact to resolve and the motion for judgment of acquittal must be denied." *Durousseau v. State,* 55 So. 3d 543, 557 (Fla. 2010) (citing *Floyd v. State,* 850 So. 2d 383 (Fla. 2002)). Furthermore, "'[t]he state is not required to rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the Defendant's theory of events.'" *Id.* (quoting *State v. Law,* 559 So. 2d 187, 189 (Fla. 1989)); *see also Knight v. State,* 186 So. 3d 1005, 1009 (Fla. 2016) ("This Court has described the circumstantial evidence standard as

follows: '[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt[,] a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.' *Jaramillo v. State*, 417 So. 2d 257, 257 (Fla. 1982). The standard applies upon appellate review, *id.,* and when a trial judge rules on a motion for judgment of acquittal, *State v. Law,* 559 So. 2d 187, 188 (Fla. 1989).").

Here, in contrast to *Wright*, there was no evidence of a third party with a motive to kill the victim. To the contrary, the evidence established that Appellant was the last person to have contact with the victim. Moreover, the State's evidence of the fully packed car, complete with golf clubs, money, and jewels, was evidence inconsistent with a man leaving temporarily and intending to return with a job. The jurors were not left to stack inference upon inference; they only had to follow the roadmap created by the GPS evidence to trace Appellant from his home—where his wife lay dead—to his ultimate destination in Tennessee.

Finally, the jury had Appellant's inculpatory statements in his letter to his ex-wife, in which he proclaimed his desire to rekindle their relationship while describing his life with the victim as a living nightmare. Appellant claimed that this was a suicide letter, but, again, the packed car with recreational equipment, food, and money, as well as his alleged means of suicide—death by truck—could lead a reasonable jury to conclude that Appellant's hypothesis of innocence was

9

unreasonable. *See Cannon v. State,* 180 So. 3d 1023, 1039 (Fla. 2015) (holding that "[n]o *reasonable* hypothesis of innocence exists as to the robbery of Mr. Morgan" (emphasis in original)); *Ferguson v. State,* 417 So. 2d 631, 635 (Fla. 1982) (rejecting, as unreasonable, Defendant's hypothesis that because victims' bodies were left overnight in a wooded area, a passerby could have taken their money and jewelry); *Westbrooks v. State,* 145 So. 3d 874, 878 (Fla. 2d DCA 2014) (holding that "[t]he State is not required to rebut a hypothesis of innocence that is unreasonable"); *Henderson v. State,* 679 So. 2d 805, 806 (Fla. 3d DCA 1996) ("While we must agree with [Appellant] that the State was required to provide evidence inconsistent with any reasonable hypothesis of innocence, we emphasize that the State was not required to exclude any *unreasonable* hypothesis."). Consequently, we are left with a jury issue and "'where there is substantial, competent evidence to support the jury verdict, that determination will not be disturbed by the courts.'" *Durousseau,* 55 So. 3d at 557 (quoting Toole v. State, 472 So. 2d 1174, 1176 (Fla. 1985)).

Because the State's evidence was sufficient for the jury to find within "a reasonable and moral certainty" that Appellant, and no one else, committed the charged offense, we AFFIRM. *Wright,* 42 Fla. L. Weekly at S592.

ROBERTS AND MAKAR, JJ., CONCUR.

10