# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-3359
_____

PERRY JAMES FORD, JR.,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
John L. Miller, Judge.

March 13, 2019

JAY, J.

In this appeal from his conviction and sentence for first-degree murder, Appellant claims that (1) the trial court erred in denying his motion for judgment of acquittal; and (2) his sentence of life imprisonment without parole is excessive and constitutes cruel and unusual punishment. We affirm Appellant's sentence without further discussion. *See Lockhart v. State*, 44 Fla. L. Weekly D150 (Fla. 1st DCA Dec. 31, 2018); *Romero v. State*, 105 So. 3d 550 (Fla. 1st DCA 2012). For the reasons that follow, we also affirm the denial of Appellant's motion for judgment of acquittal.

I.

Appellant was indicted for first-degree murder on the dual theories of premeditation and felony murder (with robbery as the underlying felony). At trial, it was established that the seventy-five-year-old victim lived alone, had mobility issues, and used a walker for balance. Appellant's grandmother was one of the victim's best friends and her caregiver as well. Appellant also assisted the victim on occasion. On June 21, 2016, the victim reported that she suspected that Appellant had stolen cash from her hospital room. Appellant admitted to law enforcement that he had stolen money from the victim, that the victim had confronted him about the theft, and that he promised to pay the victim back.

On August 10, 2016, Katie Shea reported that her car had been burglarized and that her checkbook and a .22 Ruger handgun—with a laser sight and her name engraved on it—had been stolen from the vehicle. Three days later, Appellant went with his friend, Joewaki Hamilton, to a credit union ATM to cash two of Shea's checks, which was recorded by the ATM surveillance video. Hamilton saw Appellant in possession of a gun equipped with the laser. Deandre Scott, another of Appellant's friends, saw Appellant in possession of the same gun, which Appellant kept in his book bag.

In the early morning hours of September 9, 2016, the victim received three calls from the same phone number that was registered to Appellant's younger brother, Kendrick Rodgers. The first call was received at 12:23 a.m. and lasted ten minutes, the second call was received at 12:35 a.m. and lasted two minutes, and the third call was received at 12:42 a.m. and lasted six minutes. At 12:52 a.m., the victim's home security system indicated that the victim's front door was opened and closed and that the alarm was deactivated. The front door was left open for one minute and ten seconds and then closed at 12:54 a.m. The next activity was at 1:05 a.m. when the front door was opened and closed.

For the next 33.5 hours, there was no activity detected by the system until another friend of the victim, Clara Reeves, went to the victim's house after not hearing from her, found the door unlocked, and entered the house to find the victim dead in her

bedroom. According to Reeves, the victim was very safety conscious, would never open the door to strangers, and preferred that visitors call her before they came over late at night.

When the crime scene was processed, there were *no* signs of forced entry, and all the windows and doors were secured. The victim's wallet was found opened, but her purse and cell phone were missing. A spent shell casing from a .22 firearm was found near the victim's body. An autopsy determined that the victim had been struck in the head—which caused a laceration that likely stunned her—and shot in the head at close range, which killed her. A firearms expert determined that the fatal gunshot came from the stolen .22 Ruger, which was recovered during an unrelated traffic stop—not involving Appellant—in November 2016.

After reviewing the victim's cell phone records, Detective Shannon Briarton of the Pensacola Police Department spoke to Kendrick Rodgers, who allowed her to examine his cell phone. Briarton determined that the calls to the victim had been erased from the phone. However, analysis of the cell phone records indicated that the phone was moving in relation to the cell phone towers when the calls were made and that the last call was received by a cell phone tower in the vicinity of the victim's home. Briarton then executed a search warrant of Appellant's home and found gloves, a box containing two blank checks belonging to Katie Shea, and the victim's debit card.

Afterwards, Briarton made contact with Appellant after advising him of his rights. During the interview, Appellant said that it had been months since he was at the victim's home, and that he was at the apartment of his friend, Shaniya James, on the night of the murder. Appellant admitted that he had his brother's phone and called the victim from James' apartment while he was drunk on the night of the murder, but denied going to the victim's house.

Briarton spoke to Shaniya James and determined that Appellant had been making calls to her at 1:37 a.m. on the morning of the murder. James knew Appellant from high school and denied seeing Appellant that night because she worked from 3:45 p.m. until midnight and then spent the night at her parents' home.

3

Appellant did not have a key to her apartment and was not allowed to stay there while she was away. The back door to her apartment did not close properly, but James used a piece of plywood to keep the back door closed.

Detective Christopher Forehand of the Pensacola Police Department obtained a warrant for Appellant's Facebook messages with his friend, Joewaki Hamilton. While Forehand found the corresponding time and date stamps with Hamilton's messages, the messages themselves had been deleted. However, on Hamilton's cell phone, the Facebook Messenger account showed a series of six messages—and their contents—occurring on September 8 and 9, 2016. At 11:39 p.m. on September 8, 2016, Appellant messaged Hamilton that he wanted to meet with Hamilton "when I get done doing this shit." Later, at 1:42 a.m., Appellant sent a message to Hamilton saying "WYA—Where you at—I tried to link up with y'all."

After the State rested, defense counsel moved for a judgment of acquittal on the grounds that the circumstantial evidence presented by the State did not establish that Appellant killed the victim, or that the killing was premeditated, or rebut Appellant's reasonable hypothesis of innocence that he was at Shaniya James' house during the commission of the murder. The trial court denied the motion. After the defense rested, the trial court denied Appellant's renewed motion for judgment of acquittal. The jury returned a verdict finding Appellant guilty as charged. The trial court imposed the mandatory sentence of life in prison without parole. This appeal followed.

II.

Appellant claims that the trial court erred in denying his motion for judgment of acquittal because the State's circumstantial evidence neither established that he committed the murder nor rebutted his reasonable hypothesis of innocence. To withstand a motion for judgment of acquittal in a case based wholly on circumstantial evidence, the evidence, viewed in a light most favorable to the State, must be inconsistent with any reasonable hypothesis of innocence proposed by the defendant. *State v. Law*, 559 So. 2d 187, 188-89 (Fla. 1989). This special

4

standard "requires that the circumstances lead 'to a reasonable and moral certainty that the accused and no one else committed the offense charged. It is not sufficient that the facts create a strong probability of, and be consistent with, guilt. They must be inconsistent with innocence.'" *Lindsey v. State*, 14 So. 3d 211, 215 (Fla. 2009) (quoting *Frank v. State*, 163 So. 223 (Fla. 1935)). Under this standard, "[s]uspicions alone cannot satisfy the State's burden of proving guilt beyond a reasonable doubt"; rather, "'[i]t is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict." *Ballard v. State*, 923 So. 2d 475, 482 (Fla. 2006) (quoting *Davis v. State*, 90 So. 2d 629 631-32 (Fla. 1956)).

Viewed in a light most favorable to the State, the evidence pointed to Appellant as the only possible suspect. In June 2016, the victim had accused Appellant—whom she knew through Appellant's grandmother—of stealing from her. Subsequently, Appellant was seen in possession of the murder weapon, a .22 Ruger with a laser sight that was stolen along with some checks during a vehicle burglary in August 2016. Appellant cashed two of those stolen checks three days after the burglary. After midnight on September 9, 2016, Appellant made three cell phone calls to the victim, the last of which ended at 12:48 a.m. Four minutes later, the victim's home security system indicated that the front door was opened and closed and that the alarm was deactivated. The front door was left open for one minute and ten seconds and then closed at 12:54 a.m. The next activity was at 1:05 a.m. when the front door was opened and closed.

For the next 33.5 hours, there was no activity detected until the victim's friend went to the victim's house after not hearing from her, found the door unlocked, and entered the house to find the victim dead in her bedroom with a fatal gunshot wound to the head. There were no signs of forced entry, and all the windows and doors were secured. The victim was known to be very safety conscious, was characterized as someone who would never open the door to strangers, and preferred that visitors call her before they came over late at night.

This circumstantial evidence connected Appellant to the crime through a firm timeline that established that the elderly victim

admitted Appellant—a person she knew—into her home late at night within minutes of receiving a call from Appellant and that—no more than ten minutes later—Appellant shot her with a firearm that he acquired from a prior burglary. Although Appellant claimed that he was at the apartment of his friend, Shaniya James, on the night of the murder, and that he called the victim from James' apartment, this hypothesis of innocence was inconsistent with (1) James' testimony that she was not with Appellant on that night, Appellant did not have the key to her apartment, and Appellant did not have permission to be in her apartment when she was not there; (2) cell tower data showing that Appellant's cell phone was moving when he made the calls to the victim; (3) Appellant's Facebook messages to his friend, Joewaki Hamilton, suggesting that Appellant was not at James' apartment when the victim was murdered; and (4) the deleted calls to the victim on Appellant's cell phone as well as his messages to Hamilton on his Facebook account. Because this evidence was sufficient for a jury to find within "a reasonable and moral certainty" that Appellant and no one else committed the murder, the trial court properly denied the motion for judgment of acquittal. *See Kline v. State*, 223 So. 3d 482 (Fla. 1st DCA 2017) (holding that circumstantial evidence was sufficient for the jury to find within "a reasonable and moral certainty" that Kline, and no one else, murdered his wife where the evidence connected Kline to the crime through a firm timeline, he was the last person to see his wife alive, their marriage was unhappy, he made inculpatory statements in a letter to his ex-wife, and his hypothesis of innocence was implausible).

## III.

Alternatively, Appellant claims that the State's circumstantial evidence failed to establish that either the murder was premeditated or the victim was robbed during the commission of the murder. Premeditation is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit reflection. *Johnston v. State*, 863 So. 2d 271, 285 (Fla. 2003). "Premeditation can be formed in a moment and need only exist 'for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act.'" *DeAngelo v. State*, 616 So. 2d 440, 441 (Fla. 1993) (quoting *Asay v. State*, 580 So. 2d 610, 612 (Fla. 1991)).

"'Where the element of premeditation is sought to be established by circumstantial evidence, the evidence relied upon by the state must be inconsistent with every other reasonable inference' in order to defeat a motion for judgment of acquittal." * *Jones v. State*, 36 So. 3d 903, 907 (Fla. 4th DCA 2010) (quoting *Cochran v. State*, 547 So. 2d 928, 930 (Fla. 1989)). "Premeditation may be inferred from the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted." *Id.* (quoting *Cochran*, 547 So. 2d at 938).

Viewed in a light most favorable to the State, the evidence established that Appellant arranged a visit with the victim after midnight, traveled to the victim's home armed with a firearm, pistol whipped the victim, shot her in the head with the firearm at close range, and took her purse and cell phone before he left. This evidence was inconsistent with a lack of premeditation because there was sufficient time for Appellant to be conscious of the nature of the act he was about to commit and the probable result of that act. Moreover, this evidence was sufficient to establish that Appellant robbed the victim of her purse and cell phone during the commission of the murder. Thus, the circumstantial evidence was legally sufficient to support the verdict of first-degree murder.

AFFIRMED.

B.L. THOMAS, C.J., and BILBREY, J., concur.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

*We emphasize that this special standard applies here only because the evidence of Appellant's guilt is *entirely* circumstantial. *Knight v. State*, 186 So. 3d 1005, 1010-11 (Fla. 2016).

Andy Thomas, Public Defender, and David A. Henson, Assistant Public Defender, Tallahassee, for Appellant.

Ashley B. Moody, Attorney General, and Kaitlin Weiss, Assistant Attorney General, Tallahassee, for Appellee.