FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2023-3241
_____

STEVEN YINGER,

     Appellant,

     v.

STATE OF FLORIDA,

     Appellee.

_____

On appeal from the Circuit Court for Leon County.
Tiffany M. Baker, Judge.

April 30, 2025

PER CURIAM.

A jury convicted Appellant of first-degree murder, for which he is serving a life sentence. This is his direct appeal. He argues only that he was entitled to a judgment of acquittal because the evidence of premeditation was insufficient to sustain the conviction. He thus argues that he should be re-sentenced to second-degree murder. We disagree and affirm.

The murder victim was Tallahassee paralegal Jorge Diaz-Johnston, who worked part time. He rented living space to Appellant, but Appellant had not been paying rent or utilities. The victim told Appellant on Monday, January 3, 2022, that he would have to move out Wednesday and the locks would be changed that day. The two exchanged some terse text messages.

The victim cashed a paycheck the same day he told Appellant to move out (Monday). The victim then failed to report to work. He was last seen in video from a McDonald's drive-through at 10:05 on Monday morning. At 2:08 that afternoon, Appellant used the victim's debit card to make a $100 withdrawal at Mike's Beer Barn, and then to buy things at the mall. Appellant quickly drained almost everything from the victim's accounts. Over the next few days, Appellant was seen with large amounts of cash, using the victim's bank cards, and driving the victim's BMW.

Cell phone location data placed the victim's phone in the vicinity of the victim's home until Thursday. Appellant's girlfriend told law enforcement that she and Appellant together heard and saw the victim's phone ringing in the house on Wednesday. Two texts were sent from the victim's phone to Appellant's phone on Wednesday. On Thursday, Appellant searched online for how to wipe and sell an iPhone. He then sold the victim's wiped iPhone at a kiosk that took pictures of him, recorded his thumb print, and copied his driver's license. He sent two texts to the victim's cell phone after he himself had sold it. At some point, Appellant gave the victim's Apple watch to a Tallahassee drug dealer; and a large television previously in the living room went missing.

That Friday, which was the day garbage was picked up at the victim's house, the victim's BMW was tracked traveling west from Tallahassee. Appellant posted online pictures of himself in Panama City Beach—wearing a hat he had bought that week using the victim's debit card. He later said he "rented" the victim's BMW to the drug dealer for $100.

Also on Friday, the victim's employer called the victim's estranged husband, who did not know why the victim would have missed work all week. The husband reported the victim missing, launching a law-enforcement investigation. Among other things noted, there was no comforter or blanket on the victim's bed.

On Sunday, investigators found the victim's body, along with a bed sheet and comforter, in a Jackson County landfill. A trash load picked up from the victim's area of Tallahassee on Friday had been dumped shortly before the victim's body was found. Garbage-truck video showed that one trash can picked up near the victim's

2

home appeared to be unusually heavy, but was not opened before being dumped into the truck. The victim's empty trash can was found at the edge of the victim's property. It contained residue that looked like blood, tested positive for blood, and matched the victim's DNA. The victim's DNA was on the bed linens as well.

The medical examiner determined the manner of death was homicide and the cause was ligature strangulation. He testified that the victim was intoxicated at the time of the attack. The victim had been hit with a blunt object on the right side of his head, suffering hemorrhaging and bruising to his temporal muscle. The victim's frenulum (the skin flap attaching the top gum to the lip) was torn and had associated hemorrhaging. The victim had a ligature furrow on the right side of his neck, contiguous to marks on the back of his neck, evidencing significant force. The left side of his neck was hemorrhaged, as was the strap muscle. His hyoid bone, and thyroid cartilage on the left side, were fractured.

The medical examiner further testified that in strangulation, the victim first passes out, and then the perpetrator would have to "very intentional[ly]" continue the strangulation after that for three to five minutes to kill the victim—and thus suicide was not a feasible explanation for the victim's death. The significant hemorrhaging also ruled out suicide.

The trial court gave the standard jury instruction on premeditation, as follows:

> "Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
>
> The question of premeditation is a question of fact to be determined by you from the evidence. It will be sufficient proof of premeditation if the circumstances of the killing and the conduct of the accused convince you

3

beyond a reasonable doubt of the existence of premeditation at the time of the killing.

Fla. Std. Jury Instr. (Crim.) 7.2.

Appellant argues, as he did below, that he could not properly be convicted of first-degree murder because manual strangulation alone, even if it takes several minutes, is insufficient evidence of premeditation as a matter of law. He also argues that on this record the victim's non-strangulation injuries were insufficient to support a finding of premeditation. He points to a lack of evidence of ongoing hostilities between the two men, no evidence of a struggle or defensive wounds, and insufficient passage of time in the actual attack to support premeditation. Thus, he argues the trial court should have granted his motion for judgment of acquittal and sentenced him to second-degree murder.

We have a mixed standard of review: de novo as to denial of a motion for judgment of acquittal, and abuse of discretion as to evidentiary rulings. *See Stephens v. State*, 331 So. 3d 1241, 1249 (Fla. 1st DCA 2022) (reviewing for competent, substantial evidence supporting verdict, in light most favorable to the State); *Taylor v. State*, 316 So. 3d 420, 426 (Fla. 1st DCA 2021) (reviewing de novo trial court's denial of motion for judgment of acquittal). Importantly, the State no longer needs to exclude every reasonable hypothesis of innocence. Instead, competent, substantial evidence is sufficient, even if circumstantial. *See Bush v. State*, 295 So. 3d 179, 184, 199–201 (Fla. 2020) (abandoning reasonable hypothesis of innocence standard for circumstantial-evidence cases).

First-degree premeditated murder is defined as the "unlawful killing of a human being" that is "perpetrated from a premeditated design to effect the death of the person killed or any human being." § 782.04(1)(a)1., Fla. Stat. (2022). Premeditation is an essential element of the crime. *See id.* "Premeditation is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit reflection." *Sanders v. State*, 318 So. 3d 605, 611 (Fla. 1st DCA 2021) (quoting *Ford v. State*, 267 So. 3d 1070, 1075 (Fla. 1st DCA 2019)). Premeditation "can form in a moment and need exist only 'for such time as will allow the accused to be conscious of the nature of the

act he is about to commit and the probable result of that act.'" *Id.* (quoting *Ford*, 267 So. 3d at 1075).

Challenging the jury's determination that this murder was premeditated, Appellant relies on Florida decisions that he describes as holding—contrary to other jurisdictions—that as a matter of law, strangulation alone is insufficient to establish premeditation. *See, e.g., Berube v. State*, 5 So. 3d 734, 744 (Fla. 2d DCA 2009) (discussing cases); *Perez-Ortiz v. State*, 954 So. 2d 1256, 1259 (Fla. 5th DCA 2007) (same); *Bigham v. State*, 995 So. 2d 207, 213 (Fla. 2008) (explaining that "in a number of cases" the court had concluded "evidence of premeditation was insufficient even though the defendant had killed the victim by strangulation"). These cases were fact-specific, and none of these courts purported to establish or apply a blanket rule of law that there can never be premeditation in manual strangulation. More importantly, those cases were decided under an outdated legal standard.

The Florida Supreme Court modernized the premeditation analysis in *Bush*, holding that the correct standard for determining any sufficiency-of-the-evidence claim is competent, sufficient evidence—including whether there is sufficient evidence of premeditation. 295 So. 3d at 200. The court explained that the previous standard was "unwarranted, confusing, and out of sync with both the jury instructions currently used in this state and the approach to appellate review used by the vast majority of the courts in this country." *Id.* at 199. More recently, the court amplified that "*Bush* merely abandoned a 'special appellate standard' that 'used a different standard to evaluate evidence on appeal in a wholly circumstantial evidence case than in a case with some direct evidence.'" *Miller v. State*, 379 So. 3d 1109, 1127 (Fla. 2024), *cert. denied*, 145 S. Ct. 241 (2024) (quoting *Bush*, 295 So. 3d at 184).

We applied the *Bush* standard in another strangulation case. *See Sanders*, 318 So. 3d at 611. In *Sanders*, viewing the evidence in the light most favorable to the State as we must, we found sufficient time for premeditation where the attack occurred as soon as the victim unexpectedly returned to her home, which the appellant had entered to burglarize. *Id.* at 608–09, 611. We held that "in the light most favorable to the State, the time between [the

5

appellant's] realizing the victim was home and deciding to strangle her to death was sufficient time for [the appellant] to form an intent to kill her." *Id.* at 611.

Applying the governing law to the facts presented here, we conclude there was ample evidence to support the jury's finding of premeditation. First, while Appellant trivializes the pre-assault evidence of conflict between him and the victim, the evidence existed, and it was for the jury to determine its weight in the premeditation analysis. Further, the forensic evidence strongly supports the verdict. The victim was intoxicated and thus vulnerable. He suffered at least one blunt-force injury to the temporal muscle in addition to the ligature injuries. Given the type and location of the blunt-force injury, the jury could conclude that Appellant used another object in addition to the ligature to kill the victim, further supporting a finding of intent.

The ligature injuries occurred all the way around the victim's neck and throat, including inside his upper lip. From the presence of strangulation injuries all around the victim's neck, the jury could find that Appellant exerted lethal force in different directions, as if Appellant repositioned his grip. Given the evidence of both blunt-force and ligature injuries, which one came first is irrelevant. The jury could conclude that Appellant had to use one and switch to the other, which is clear evidence of intent.

Finally, the coroner testified that strangulation causes loss of consciousness first, after which the perpetrator must maintain a lethal constrictive force still longer for the victim to die. Even if death takes only a few minutes, that is long enough. Particularly under the *Bush* standard, this is more than enough evidence from which the jury could find premeditation.

AFFIRMED.

ROWE, KELSEY, and M.K. THOMAS, JJ., concur.

6

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Jessica J. Yeary, Public Defender; Kathleen Elizabeth Pafford and Megan Lynne Long, Assistant Public Defenders, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Steven Edward Woods, Assistant Attorney General, Tallahassee, for Appellee.