# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

No. 1D2023-2788

———————————————————

ADAM JOHN SCOTT,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

———————————————————

On appeal from the Circuit Court for Levy County.
William E. Davis, Judge.

July 9, 2025

ROWE, J.

Adam John Scott (Scott) appeals his conviction for attempted first-degree murder of four law enforcement officers and his sentence of life in prison. He argues that the trial court erred in denying his motion for judgment of acquittal, overruling his objections to the State's closing arguments, and imposing the cost of prosecution. We affirm as to all issues and write only to address the court's ruling on the motion for judgment of acquittal.

*Facts*

The State presented the following evidence at trial. In July 2021, Scott and Angel Scott engaged in a verbal and physical altercation at their home. Their minor son was at home and observed the altercation. Angel managed to escape from Scott. She drove away from the home with her children and went to the home of Candie Jennings. Candie is Scott's ex-wife and mother to his then-teenage daughter, Zoey.

Angel told Candie about the altercation with Scott. Candie called the police. Candie then called Scott to tell him that the police were on the way to his home. Scott told Candie that he would be waiting for the police on the front porch with a gun and that he would "shoot them dead." Before Scott ended the phone call, Candie heard what sounded like gunshots.

Candie tried to call Scott again, but he did not answer. When his daughter Zoey called Scott's daughter called him, he answered. She told Scott to calm down and to turn himself in to the police. Scott responded that he would shoot the police when they arrived. Before the call ended, Zoey heard what sounded like police officers arriving followed closely by the sound of gunshots.

Corporal Michael McNeil and Deputy Gerard Williams responded to the Jennings' home to investigate the report of domestic abuse. Soon after, they went to a staging area near Scott's home and were joined by Sergeant Tom Martin and Deputy Alton Horne—along with Horne's K9, Bear. The officers heard several gunshots as they approached Scott's home. They also heard Scott talking in an angry voice to a female on speakerphone. They heard the female warn Scott that the police were on their way to his home, and Scott said, "I'll kill them, too."

Deputy Horne then announced: "Sheriff's Office. Show us your hands." Scott responded by raising his firearm and shooting at the officers. All four officers returned fire after feeling the bullets fly past them. Scott then moved away from the area while continuing to fire his weapon. After ensuring that none of them were injured, the officers established a perimeter until other law enforcement

2

units arrived at the Scott home. Multiple officers responded to the scene and unsuccessfully attempted to locate Scott that night.

The next day, Charles Mills, a friend of Scott, woke up to find Scott in his home. When Mills learned about the shooting, he called the police to report Scott's location. Lieutenant Matt Narayan responded to Mills' home and arrested Scott. Narayan read Scott his rights and interviewed him. During the interview, Scott explained that his fight with Angel started when she came to a bar to speak with him but left the bar without telling him. Scott became enraged and threw his wedding ring to ground. He then drove home to confront Angel. Scott said he and Angel exchanged blows before she left the home.

Scott acknowledged that his daughter told him that officers were coming to his home the day of the shooting. But he denied telling her that he planned to shoot the officers when they arrived. He insisted that his statement about his intention to shoot someone was made in reference to Angel's brother, Justin McClurg. When the officers arrived at his home, Scott stated that he did not know that they were police officers. He claimed that he only saw men dressed in black pointing guns at him. But later, Scott admitted that he shot at the officers because he wanted one of the officers to return fire and kill him.

Defense counsel moved for a judgment of acquittal on the attempted first-degree murder charge, arguing that there was no evidence of premeditation. The court denied the motion.

Scott then testified. He attributed his actions on the day of the shooting to the effects of withdrawal from his use of unprescribed Oxycodone and Kratom, an over-the-counter pain medication. Scott explained that after the altercation with Angel, McClurg called Scott and threatened to kill him for putting his hands on Angel. That phone call prompted Scott to retrieve a handgun from the closet. Then, while Scott was standing on the front porch of his home and speaking with his daughter on the phone, he heard someone yell something. Scott turned around and saw what looked like a white vehicle and a man pointing a machine gun at him. Scott thought the vehicle belonged to McClurg. Scott started firing his weapon when he saw the gun pointed at him. But he claimed

that he fired at the ground. He denied that he intended to kill or seriously injure any of the police officers. The defense rested.

The jury found Scott guilty of attempted first-degree murder of a law enforcement officer. The court sentenced him to life in prison with a twenty-year mandatory minimum term. This appeal follows.

*Analysis*

Scott argues that the trial court reversibly erred when it denied his motion for judgment of acquittal because there was insufficient evidence of premeditation to support the charge of attempted first-degree murder. Our review is de novo. *Moran v. State*, 278 So. 3d 905, 908 (Fla. 1st DCA 2019).

When there is competent, substantial evidence to establish every element of the crime, then judgment of acquittal is improper. *Bush v. State*, 295 So. 3d 179, 200 (Fla. 2020). The evidence must be construed in the light most favorable to the State when ruling on a motion for judgment of acquittal. *Id.*

To prove the charge of attempted first-degree murder, the State had to show that Scott's attempted unlawful killing of the police officers was "perpetrated from a premeditated design to effect the death of the person killed." § 782.04(1)(a)1., Fla. Stat. (2021). "Premeditation is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit reflection." *Ford v. State*, 267 So. 3d 1070, 1075 (Fla. 1st DCA 2019). It can form in a moment and need exist only "for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act." *Id.* (quoting *DeAngelo v. State*, 616 So. 2d 440, 441 (Fla. 1993)).

The State presented competent, substantial evidence to show that Scott acted with premeditation—that he had a fully formed conscious intent to kill the officers. After Scott had been warned by Candie and Zoey that the police would arrive at his home, Candie, Zoey, and the officers all heard Scott say, "I'll kill them." Although Scott testified that he was referring to McClurg when he

4

made the statement, the jury apparently rejected Scott's testimony for the testimony from other witnesses that the statement stemmed from Scott being informed that the police were on the way to his home.

The trial testimony showed that before Scott began shooting, the four officers who responded to the scene were wearing uniforms, were clearly visible, and identified themselves as being from the Sheriff's Office. The officers testified that they felt the bullets go by their heads, which contradicted Scott's claim that he only fired his weapon toward the ground. After shooting at the officers, Scott fled from the scene. On this record, the evidence was legally sufficient to show that Scott acted with premeditation when he shot at the officers. And so, the trial court did not err when it denied the motion for judgment of acquittal. *Fitzpatrick v. State*, 900 So. 2d 495, 508 (Fla. 2005) ("The fact that the evidence is contradictory does not warrant a judgment of acquittal because the weight of the evidence and the witnesses' credibility are questions solely for the jury."). Therefore, we AFFIRM Scott's conviction and sentence.

M.K. THOMAS, J., concurs; KELSEY, J., concurs with opinion.

––––––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––––––

KELSEY, J., concurring.

I concur with the affirmance and majority opinion, and write separately only to address the prosecutor's utterly inaccurate definition of "premeditation." Rather than use statutory, caselaw, or jury instruction definitions of "premeditation," the prosecutor repeatedly argued that premeditation means merely being "alive, awake."

5

To the contrary, premeditation is as the majority defines it under *Ford*, 267 So. 3d at 1075: "a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit reflection." Fortunately, the trial judge here instructed the jury on the correct definition of "premeditation," which is reflected in the standard jury instruction, as follows:

> "Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.

> The question of premeditation is a question of fact to be determined by you from the evidence. It will be sufficient proof of premeditation if the circumstances of the killing and the conduct of the accused convince you beyond a reasonable doubt of the existence of premeditation at the time of the killing.

Fla. Std. Jury Instr. (Crim.) 7.2. *See also Yinger v. State*, 2025 WL 1240080, at *2 (Fla. 1st DCA Apr. 30, 2025) (discussing and applying the correct definition of premeditation).

---

Jessica J. Yeary, Public Defender, and Pamela Diane Presnell, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Julian Elmo Markham, III, Assistant Attorney General, Tallahassee, for Appellee.

6